UNITED STATES DISTRICT COURT        **A JURY TRIAL IS**
SOUTHERN DISTRICT OF NEW YORK    **DEMANDED**
_____

JOHN A. ARETAKIS,

               Plaintiffs,         **AMENDED**
                              **COMPLAINT**

   -against-                    **Civil Action**
                              **No. 07-Civ-5444**
ROBERT DURIVAGE, TIMOTHY NUGENT, TOWN   **(Hon. Shira A. Scheindlin)**
OF NORTH GREENBUSH AND ROBERT D. WELLS,

               Defendants.
_____

      The Plaintiff JOHN A. ARETAKIS, by and through his attorney, JOHN A. ARETAKIS,

does hereby state as and for a Complaint against the Defendants the following:


### JURISDICTION AND VENUE

    1.     This action arises under the First**,** Fourth, Fifth and Fourteenth Amendments to the

United States Constitution and is a civil rights, false arrest and civil action brought pursuant to 42

U.S.C. 1983 and 1988, and pendent state law tort claims.

    2.     Jurisdiction of this Court is invoked under the Federal Statutes involved.  Plaintiff

further invokes the pendent jurisdiction of this Court to hear and decide claims under State Law.

    3.     Venue is sought in this district because it is where the Plaintiff resides and where

events complained of occurred and is proper pursuant to 28 U.S.C. § 1391 (b) (1) and (2).

    4.     This Court has subject matter pursuant due to the federal, statutory and common

law claims and because the amount in controversy exceeds the sum of $75,000.00, exclusive of

interest and costs and causes of actions are premised on federal statutes and pursuant to the

violation of the Plaintiff's Federal Civil rights and constitutional laws

5.     The Plaintiff caused a Notice of Claim to be timely filed with respect to these claims.  The Defendants' Noticed and took a 50-h Hearing of the Plaintiff and have notice of the claims herein.  The Plaintiff incorporates by reference the Notice of Claim and the 50-h Hearing to this Complaint.

6.     The parties also conducted a criminal trial from June 1, 2006to June 9, 2006 and the record and transcript of same is also incorporated by reference.

### PARTIES

7.     The Plaintiff JOHN A. ARETAKIS, (hereinafter "Plaintiff"  **or** "ARETAKIS") at all relevant times material to the Complaint herein, is over the age of eighteen and is a United States citizen, resident of the State of New York and County of New York.

8.     The Plaintiff is believed to be one of only two attorneys in New York State who has primarily been involved in cases or lawsuits with respect to clergy sexual abuse cases and has represented over 250 persons who allege they were sexually abused by priests as children, and as such the Plaintiff is and has been a unique or obvious individual to be targeted with unfair, unequal and illegal treatment by the government or government officials, persons such  as the Defendants who misuse the color of their office to silence the Plaintiff or curtail his speech and action involving clergy sexual abuse.

9.     The Plaintiff is and has been a sole practitioner who also has the distinction of handling clergy sexual abuse cases in excess of eleven years, and upon information and belief, has had the largest settlement in New York State regarding an abuse case regarding clergy.

10.     The Plaintiff has a Juris Doctorate from Albany Law School and a Masters of Law from Georgetown University Law Center and has never been arrested or convicted of a crime and has never engaged in or been accused of criminal conduct except by the Defendants.

11.     Upon information and belief, at all times relevant to this Complaint herein, the Defendant TOWN OF NORTH GREENBUSH (hereinafter Defendant "TOWN"), is a municipal corporation and governmental subdivision of the State of New York and/or has been an entity of a public corporation duly organized and existing under and by virtue of the Laws and Constitution of the State of New York and has offices at 2 Williams Road, North Greenbush, New York for the purposes of doing business in the Town of North Greenbush, County of Rensselaer and State of New York and employs police officers and a police department pursuant to law.

12.     Upon information and belief, at all relevant times material to the Complaint herein, the Defendant ROBERT DURIVAGE (hereinafter Defendant "DURIVAGE") is and has been a police officer for the Town of North Greenbush and authorized government agent.

13.     Upon information and belief, the Defendant TIMOTHY NUGENT (hereinafter Defendant "NUGENT") is and has been the attorney and prosecutor for Defendant or the County at material times in the Complaint, is employed by or has worked with the TOWN OF NORTH GREENBUSH and acted under the color and by virtue of the statutes, customs, policies, ordinance and usage of the State of New York and the County of Rensselaer, and is an entity of a municipal corporation or government agency capable of being sued.

14.     The individual state actors are agents of the state or state agencies and have acted or are employed and acting under the color of their official office.

15.     After the District Attorney refused or declined to prosecute a case against the Plaintiff in an incident stemming from acts on September 6, 2005, a special prosecutor, namely Carmelo LaQuidera was appointed special prosecutor for a period of time before withdrawing from the case, whereupon the Defendant TIMOTHY NUGENT sought or obtained appointment as the special prosecutor.

3

16    The Plaintiff is suing each and all Defendants in both their individual and official capacities.

17.    The Defendant ROBERT D. WELLS (hereinafter WELLS), upon information and belief is or was during the relevant time, a licensed process server who was employed or engaged to serve the Plaintiff with a lawsuit on behalf of the Catholic Church on September 6, 2005.

18.    The Defendant WELLS, a complainant against the Plaintiff, has and had during the relevant time at least seven felony convictions and did seven years in State prison for seriously injuring a person while driving under the influence of alcohol.

## FACTUAL ALLEGATIONS

19.    On September 6, 2005, the Defendant ROBERT WELLS, on behalf of the Catholic Church and its agents, was attempting to serve and commence a lawsuit against the Plaintiff on behalf of the Catholic Church.  When the Defendant WELLS served the Plaintiff with same, he thereafter attempted to, and did file false and fabricated criminal charges or a complaint against the Plaintiff for attempted murder, harassment, larceny, petty larceny and use of a motor vehicle to harm amongst other false and fabricated claims.

20.    This service took place at a location that the Defendant WELLS had previously been advised not to enter.

21.    The Plaintiff JOHN A. ARETAKIS is and has been one of the two attorneys in the entire State of New York who represents or has represented numerous victims of clergy sexual abuse, and has spoken out and been a vocal critic of the Catholic Church in New York County, the Capital District and around the State of New York.  Filing false criminal charges against the Plaintiff served the purposes of the Defendant WELLS' employer, as well as the interests of the co-Defendants as set out hereafter.

4

22.    In exposing this abuse and the cover-up of same, the Plaintiff has periodically become a target of false criminal complaints by church agents and public officials.

23.    The Plaintiff ARETAKIS has been intentionally targeted by the church and officials with fabricated criminal actions, including but not limited to the fabricated criminal action in the underlying criminal action.

24.    The Defendants and TOWN OF NORTH GREENBUSH have engaged in an intentional and long standing practice or policy of filing false criminal charges and prosecuting same against the Plaintiff.

25.    On September 6, 2005, the Plaintiff was in New York City where he works and lives and received a telephone call that his wife was having a serious cardiac event and was rushed to the hospital.  The Plaintiff rushed away and upon arriving at a place where his wife maintains a home was chased by an unknown person in a motor vehicle by a process server, while the Plaintiff was rushing to the hospital and attempting to obtain child care for his son.

26.    On September 6, 2005 the process server for the Catholic Church, after chasing the Plaintiff in a motor vehicle and serving process on the Plaintiff, attempted to make and file criminal information and charges with the Defendant DURIVAGE and NORTH GREENBUSH that JOHN ARETAKIS had harassed and stolen from the process server and did in fact attempt to commit bodily harm or attempted murder.

27.    Even though TOWN OF NORTH GREENBUSH Officer Jurs arrived at the scene, the investigation was taken over and was handled by the Defendant ROBERT DURIVAGE.

28.    On September 6, 2005, the Defendant WELLS attempted to, and did serve a lawsuit on the Plaintiff on behalf of the Catholic Church, and after serving the lawsuit, made false and fabricated claims that the Plaintiff harassed the Defendant WELLS tried to cause severe

bodily harm or attempted murder and stole the Defendant WELLS' briefcase, which the Defendant's government agents falsely pursued and improperly prosecuted.

29.     That due to the Plaintiff's work in representing and advocating for victims of clergy sexual abuse, and doing so in a high profile public arena, the church and its agents and elements of law enforcement including the Defendants, have attempted to file and prosecute false criminal charges against the Plaintiff.

30.     That the Defendants and all of them were on notice of the repeated attempts of the church and their agents to file and prosecute false criminal charges against the Plaintiff, and despite this knowledge, still pursued and prosecuted false charges, knowing the charges were false.

31.     The government Defendants have and had scienter and a motivation to file and prosecute false charges against the Plaintiff.

32.     The Defendants were aware of, and had notice that the Catholic Church or its agents distributed a memorandum in June 2005 and other directives to priests, churches, parishioners and church agents to file criminal or other charges against the Plaintiff if and when the Plaintiff is seen at or near church property.  The Defendants NUGENT and DURIVAGE had notice that the church employed this strategy and still pursued false charges against the Plaintiff when the facts did not warrant same.

33.     The Defendant NUGENT engaged in prosecutorial misconduct and the abuse of his office and the color of his office in the continued false and fabricated prosecution of the Plaintiff through a Jury Trial that resulted in the Plaintiff's acquittal on June 9, 2006.

34.     The Defendant NUGENT used the power of the government and power of his office to deny the Plaintiff a fair trial and the trial record and evidence demonstrated same.

35.    The Defendant NUGENT had a personal attorney on civil matters, namely Robert Roche, Esq. and during the Jury Trial in the case of *People v. John A. Aretakis* which ran from June 1, 2005 to June 9, 2005, had Mr. Roche call the trial judge on the weekend at the Judge's home during the trial in an attempt to have the Plaintiff denied a fair trial.

36.    The Defendant NUGENT is, upon information and belief, a trained and experienced criminal lawyer and prosecutor.  Despite this training and experience, the Defendant NUGENT

a)    intentionally used false information to prosecute a case;

b)    failed to offer the Plaintiff any plea bargain;

c)    suborned and allowed perjury;

d)    abused legal process;

e)    failed to consider evidence that exculpated the Plaintiff;

f)    denied the Plaintiff a fair trial on the charges; and

g)    maliciously prosecuted the Plaintiff.

37.    Although the Defendant WELLS tried to file charges of attempted murder and use of motor vehicle to cause serious bodily harm, the only charges filed, pursued and prosecuted against the Plaintiff were larceny and harassment.

38.    In light of the relatively minor charges against the Plaintiff, that being harassment which is a violation, and petit larceny which is a misdemeanor, and in light of the Plaintiff's prior history of never having been charged with a crime, arrested or convicted of any charges, the failure of the Defendant NUGENT to offer the Plaintiff an adjournment in contemplation of dismissal (ACOD) is a glaring example of prosecutorial misconduct, abuse of the color of his office, and a violation of the rights, equal protection and due process of the Plaintiff.

39. The complaint the Defendant WELLS gave the Defendant DURIVAGE did not make sense and did not even allege physical contact. Despite the fact that the Defendant DURIVAGE knew the charges against the Plaintiff were false and fabricated, Defendant DURIVAGE still brought same forward to be investigated and prosecuted.

40. The Defendant DURIVAGE had notice that the circumstances involved the Defendant WELLS who chased the Plaintiff, and that the Defendant WELLS, being a process server had a history of interactions with persons that were less than friendly. The Defendant DURIVAGE knew the Defendant WELLS drove his car recklessly and that he had been staking out a home where the Plaintiff's wife primarily resided and that the Defendant WELLS was previously asked not to trespass.

41. The Defendant DURIVAGE conducted an investigation that demonstrated scienter and a bias to arrest, charge and prosecute the Plaintiff despite the absence of credible facts and evidence.

42. The Defendants DURIVAGE and NUGENT each knew of or were aware of and disregarded a St. Pt. Peter's Hospital Chart that confirmed that the Plaintiff's wife was a cardiac patient who was an overnight patient due to severe chest pains on September 6, 2005 at the time of the alleged incident.

43. A reasonable prosecutor with experience in criminal law would have offered the Plaintiff an Adjournment in Contemplation of Dismissal (ACOD), but what the Defendants DURIVAGE and NUGENT aspired for was a jury trial that went to verdict, because that would not only humiliate a high profile clergy sexual abuse attorney, but it would also cost the Plaintiff substantial amount of time and monies and negative and scandalous media coverage.

44.    During the trial, the Defendants DURIVAGE and NUGENT had repeated communication with agents for the Catholic Church including an attorney for Defendant WELLS in a continuing attempt to assist and provide false and fabricated charges and acknowledged that agents of the church were aggressively pursuing the case against the Plaintiff.

45.    The failure of the Defendant NUGENT to offer the Plaintiff at any time an ACOD is an example of the Defendant NUGENT'S bias, animus and misuse of the color of his office to harm the Plaintiff.

46.    The Defendant NUGENT also failed to drop or dismiss the charges of harassment in light of the fact that there was no physical contact alleged; nor were there any allegation in charges actually filed of any attempt to engage in physical contact.

47.    The Defendant NUGENT also failed to have any evidence that there was any intent as required by statute for larceny, including but not limited to the intent to deprive one of property.

48    The Defendant DURIVAGE and his parents are actively involved in politics, and due to political affiliations and personal animus, the Defendant DURIVAGE has pursued and facilitated fabricated and false charges against the Plaintiff due to a motivation to pursue his own private and political interests.  The Defendant DURIVAGE used the power of the police and his office to file, investigate and pursue false criminal charges against the Plaintiff.

49.    The Defendant DURIVAGE has known and disliked the Plaintiff for a number of years prior to the acts complained of herein, and said animus is and was a reason or motivation for the Defendant DURIVAGE to have engaged in inappropriate conduct and/or the misuse of the color of his office against the Plaintiff.

50.    The Defendant NUGENT knew and had notice that the Defendant DURIVAGE was fabricating his investigation and criminal complaints against the Plaintiff.

51.    By way of background, the Defendant DURIVAGE has known the Plaintiff's spouse since kindergarten class and childhood and for over forty years.  The Defendant DURIVAGE also worked closely with the Plaintiff's wife who is a retired acting City Court and Town Court Judge.

52.    The Defendant DURIVAGE also worked with the Plaintiff's cousin who is an acting Supreme Court Judge and Family Court Judge.  The Defendant DURIVAGE also worked with the Plaintiff's (wife's) uncle who was a Supreme Court and United States District Court Judge in the Northern District.

53.    Despite the familiarity with the Plaintiff and with the Plaintiff's family, the Defendant DURIVAGE has had a longstanding and continued animus toward the Plaintiff that resulted in the arrest, prosecution and acts complained of herein in the absence of credible evidence.

54.    The Defendant DURIVAGE committed such acts as a police officer and while employed by the Town of North Greenbush, and under and using the color of his office, and he is also actively and politically involved adverse to the Plaintiff's spouse and in-laws.

55.    The Defendant DURIVAGE is being sued in his personal capacity.

56.    The Defendant NUGENT is also a local Town Chairman of a political party.  Due to efforts and a motivation to pursue and advance his own private and political interest and/or in the interest of assisting the Catholic Church, the Defendant NUGENT pursued and prosecuted fabricated and false charges against the Plaintiff.

57.    The Defendant NUGENT is being sued in his personal capacity.

58.     Despite what were obviously false and fraudulent claims and allegations, the Defendant DURIVAGE investigated and pursued said false charges resulting in the arrest of the Plaintiff on September 16, 2005.

59.     That the Defendant DURIVAGE investigated allegations of the Defendant WELLS and repeatedly secretly tape recorded calls and interviews with the Plaintiff on September 6, 2005, September 7, 2005, September 8, 2005 and thereafter, as well as secretly taping and recording telephone calls and interviews with eye witnesses.

60.     In investigating the allegations of the Defendant WELLS, the Defendant DURIVAGE had an independent eye witness to the events that contradicted the Defendant WELLS.

61.     At the time of the investigation and prosecution, the Defendants DURIVAGE and NUGENT knew that WELLS had multiple felony convictions and had spent almost seven years in a State Prison, whereas the Plaintiff was a law abiding attorney who was in the process of visiting his wife who was in the Emergency Room of St. Peter's Hospital.

62.     At the time of the alleged criminal occurrence, with telephone records and tape recorded calls from suspects and witnesses, the Defendants knew that the Plaintiff committed no crime.  The Defendant NUGENT and Defendant DURIVAGE had and ignored records and evidence that indicated that during the entire eight minute time period when the alleged crime of harassment and petty larceny occurred, the plaintiff JOHN ARETAKIS was on the telephone that entire time.  Despite an obligation to pursue justice, the Defendant NUGENT went to great lengths to ignore exculpatory evidence and to keep evidence from a jury.

63.     The Defendant NUGENT departed from good and acceptable standards and customs of prosecution, and violated rules including but not limited to turning over three tape recordings of the Plaintiff when there were six tape recordings that existed.

64.     The Defendants also had an eye witness to the entire situation and the eye witness stated under oath that no larceny occurred, no harassment occurred and that actually the complainant Robert Wells was the aggressor and wrongdoer in the service of process and the incidents described.

65.     The Defendant WELLS, knowing full well that he was attempting to set up the Plaintiff, brought his wife with him when he served process on the Plaintiff, believing that a ready made witness would or could help advance any false claims brought forth, and the Defendants DURIVAGE and NUGENT had notice of same, and had notice of the Catholic Church's repeated attempts to file false criminal charges against the Plaintiff.

66.     Despite the fact that the false charges stemmed from charges of the Defendant WELLS, who worked for the Catholic Church, the Defendants DURIVAGE and NUGENT assembled and prosecuted the case that they knew was false and fabricated and therefore, these Defendants maliciously prosecuted the Plaintiff.

67.     At and before the false arrest of the Plaintiff on September 16, 2005, an attorney licensed to practice law in New York, the Defendant DURIVAGE learned that the complainant had approximately seven felony DWI arrests, and also spent approximately seven years in State prison for causing near fatal injuries to a person caused while the complainant was driving drunk, and that the Defendant WELLS was being influenced to pursue false claims against the Plaintiff.

68.     That in addition to the complainant being a process server for the Roman Catholic Diocese, which was adverse to the Plaintiff on dozens cases, this matter warranted the Defendants to view the complainant and his complaints skeptically.

69.     Despite the fact that there was overwhelming evidence of the Plaintiff's actual innocence of the charges, the Defendants prosecuted same in order to try to secure a conviction at all costs.

70.     The Defendants refused to use or consider exculpatory evidence.

71.     The Defendants had witnesses who fabricated the truth or contradicted themselves or were contradicted by the evidence.

72.     Despite a criminal complaint that had no merit, the Defendants filed and pursued and prosecuted false criminal charges against the Plaintiff in an intentional retaliatory manner.

73     The Defendants also have utilized other police officers who have threatened or targeted the Plaintiff at and after the time of the initial charges.

74.     The Defendants employ an officer, namely Sergeant Christopher Marsh, who had threatened the Plaintiff with arrest in February 2007, the day before the Plaintiff's 50-h Hearing in this case.

75.     The Defendants employ an officer, namely Michael Merola who issued the Plaintiff a speeding ticket in May 2007 when the Plaintiff was not speeding, and threatened the Plaintiff, thus confirming the continuing nature of the Defendants' actions.

76.     As such, these are examples of the continuing nature of the violations of the Plaintiff's civil and constitutional rights.

77.      The Defendants, by pursuing charges they knew were untrue have engaged in a pattern and practice of the denying civil and other constitutional rights to the Plaintiff.

78.    On September 6, 2005, the date of the false criminal action, the Plaintiff was working in and attending a meeting in the City and County of New York.

79.    On September 16, 2005, the date of the false arrest of the Plaintiff, the Plaintiff was in the City and County of New York.

80.    On dates from September 6, 2005 to on or about September 9, 2005, when the Defendants were secretly tape recording telephone calls of the Plaintiff, the Plaintiff was at various times in the City and County of New York.

81.    While the Defendant DURIVAGE investigated the case, he secretly recorded at least six telephone calls with the Plaintiff; and he and/or the Defendant NUGENT only exchanged or turned over three of these calls.

82.    The Plaintiff during the ten months the case progressed through the Courts worked on the case and also represented himself on the case from the New York City Metropolitan area.

83.    While the charges were pending and before the trial, the Plaintiff was repeatedly in the newspaper and on the news as a person charged with criminal action, Plaintiff was denied the renewal of his New York Secure Attorney's Pass, was described in legal papers to Courts in New York County as an attorney facing criminal charges and was otherwise described as a criminal by the Catholic Church and the Defendants.

84.    The Defendants in their attempts to charge, prosecute and convict the Plaintiff, manufactured and ignored evidence, all in the pursuit to falsely convict or prosecute the Plaintiff, then a high profile clergy abuse attorney in order to embarrass the Plaintiff and cost the Plaintiff significant time and expense, and engaged in efforts that would or could discredit the Plaintiff and abridge his free speech and constitutional rights and ability to advocate for victims of clergy sexual abuse.

85.    The Defendants also suborned and committed perjury and advanced false claims.

86.    The Plaintiff's damages occurred in the City and County of New York.

87.    The Plaintiff obtained treatment and sustained losses in the City and County of New York.

88.    During the ten months that the charges were pending, the Catholic Church repeatedly used newspaper stories that the Plaintiff was a criminal or being charged with crimes in order to try to discredit the Plaintiff or cases the Plaintiff was involved in New York County and elsewhere.

### AS AND FOR THE FIRST CAUSE OF ACTION

89.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

90.    The Defendants are jointly and severally liable to the Plaintiff for this cause of action of intentional infliction of emotional distress.

91.    In the period of time contained in these allegations, the Defendants have engaged in extraordinary and extreme acts of malice and outrageous actions toward the Plaintiff.

92.    The Defendants' conduct was and has been extreme and outrageous and was intentional or done with a reckless disregard for the welfare of the Plaintiff, and was done because the Plaintiff was and is a person who advocated for, and complained about sexual abuse by clergy and has stood up and supported victims of clergy sexual abuse and has also made legitimate and accurate criticisms of police and elected officials, including elected officials in the Town and County in which the Defendants work and reside.

93.    The Defendants' acts were and are wanton and careless and in the past year have targeted the Plaintiff with these actions due to malice and animus.

15

94.    By engaging in a clear pattern and ongoing activity of egregious behavior herein described, the Defendants intended to inflict distress upon the Plaintiff and should have known that distress and damages would likely occur.

95.    The Defendants engaged in a series of reckless acts which has proximately damaged the Plaintiff.

96.    The Defendants' acts, when viewed in their entirety, consisted of a pattern of reckless and careless acts, and involved a period time from September 16, 2005 to May 2007.

97.    That such actions above described by the Defendants, is shocking to the conscience of right-thinking persons in the community and damages were proximately caused to the Plaintiff by all Defendants' conduct.

98.    As a result of Defendants' conduct, the Plaintiff experienced and continues to experience severe emotional distress proximately caused by the Defendants' actions.

99.    The Defendants each have displayed extremely reckless conduct, deception and bad faith actions towards the Plaintiff.

100.    That in view of the minor nature of the false criminal charges, the Plaintiff did not need to be, but was handcuffed, attached to and restrained in a holding area, transported to a Court while handcuffed in a squad car, with a second squad car leading and brought to Court.

101.    These acts were done to further humiliate and degrade the Plaintiff.  The Plaintiff is aware that in cases of this nature, handcuffs and this type of transportation is not used.

102.    As a result of the above-mentioned conduct, Plaintiff has suffered and continue to suffer great pain of mind, body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self esteem, disgrace, humiliation, and loss of enjoyment of life;

has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses, costs and damages.

103.    The above actions of the Defendants constituted a plan or pattern of continued actions committed with the intent to retaliate against the Plaintiff.

104.    Defendants conspired to and did take specific acts to conceal the misconduct perpetrated by Defendants.  Those specific acts were of an ongoing nature.

105.    The use of retaliatory, hostile and intentional acts of the Defendants to further the Defendants' nefarious actions is and was particularly troubling in light of their position of trust in law enforcement and in the prosecution of crimes.

106.    The Defendants took numerous acts or steps in furtherance of their acts including, but not limited to:

  a) filing false charges against Plaintiff;

  b) fabricating false charges against Plaintiff;

  c) pursuing false charges against the plaintiff that the defendants knew were false;

  d) suborning perjury and committing perjury;

  e) attempting to build a case against the Plaintiff;

  f) retaliating against the Plaintiff; and

  g) punishing the Plaintiff for exposing predators and or for working for and with victims of abuse.

107.    The false arrest of the Plaintiff was on September 16, 2005 and the acquittal by a Jury trial was on June 9, 2006 and the Defendants' bad faith and illegal acts occurred during this entire time and continued thereafter.

108.    In addition, the Defendants or their agents, on or about February 6, 2007, the day before the Plaintiff's 50-h Hearing threatened the Plaintiff with arrest and assault.

109.    In addition, in or about May 2007, the employee of the Defendant, Officer Michael Merola ticketed the Plaintiff.

110.    Even though for the charges filed and prosecuted against the Plaintiff were minor in degree, the Defendant DURIVAGE took over the case from an Officer Jurs, and investigated the case, tape recorded numerous telephone calls of the Plaintiff and witnesses, and repeatedly lied to the Plaintiff and to a Jury and did so for no legitimate or legal reason but rather to advance his own private, political and personal interests.

111.    The Defendant NUGENT also allowed false and fabricated actions and testimony of the Defendant DURIVAGE to be used in an unfair effort to convict the Plaintiff.

112.    The Defendants conspired to have the Plaintiff investigated on false charges, or made false claims against the Plaintiff due to his actions viewed by the Defendants.

### AS AND FOR THE SECOND CAUSE OF ACTION

113.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

114.    This cause of action against the Defendants jointly and severally and a violation of Plaintiff's First Amendment and Constitutional rights of free speech and Title VII of the Civil Rights Act of 1964 for discrimination based on his religion, his work and his outspoken criticisms and in violation of 42 U.S.C. § 1983.

115.    The Defendants acted under color of statute, ordinance, regulation, custom or usage.

116.    The Defendants subjected Plaintiff to the deprivation of his rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States, and the Constitution and laws of the State of New York.

117.    The Fourteenth Amendment to the Constitution provides that no state "shall deprive any person of life, liberty or property without due process of law."  Due process requires a guarantee of a fair process.

118.    The Defendants' actions clearly denied the Plaintiff due process, as it has been factually alleged that the Defendant DURIVAGE and NUGENT'S motive was to advance their own purposes and to aid in the Catholic Church's or the Defendants' silencing and harming the Plaintiff.

119.    In effect, the Defendants DURIVAGE and NUGENT acted to further their own interests, and also acted to further the interest of a third party private religious denomination, who the Plaintiff was involved in exposing the cover-up of clergy sexual abuse of children.

120.    The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated persons alike.  If an individual is selectively treated based on an impermissible consideration such as religion or to punish in the exercise of constitutional right or malicious bad faith intent to injure a person, then a claim for this violation exists.

121.    § 1983 provides a federal remedy against incursions upon due rights secured by the Constitution of the United States, and is to be accorded a sweep as broad as its language.  The

purpose of 1983 actions is to provide compensatory relief to those deprived of their federal rights by state actors.

122.     42 U.S.C. § 1983 in pertinent part states:

> "Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

123.     The Defendant NUGENT engaged in prosecutorial misconduct by advancing and prosecuting charges that had no merit.

124.     The Defendant DURIVAGE engaged in premeditated police misconduct and abuse of the power of his office.

125.     The Defendants have a failed policy of oversight and the inappropriate supervision of officers.

126.     The Defendant NUGENT conspired with the Defendant DURIVAGE to deprive the Plaintiff of his constitutional rights and to cover-up misconduct of the Defendant DURIVAGE.

127.     The Defendants NUGENT and DURIVAGE each conspired to submit and suborn perjury and fabricated false charges.

128.     The Defendants DURIVAGE and NUGENT, during the trial tried to intimidate coerce witnesses in their attempts to convict the Plaintiff of false charges.

129.     By reason of the foregoing, Plaintiff was injured, and subjected to physical and mental pain and suffering, emotional distress, embarrassment, humiliation and fear, from which he continues to suffer and for which he is entitled to compensatory damages.

130.     Plaintiff is entitled to punitive damages in connection with this cause of action.

131.    Plaintiff is entitled to recover a reasonable attorney's fee in connection with this cause of action pursuant to 42 U.S.C. § 1988.

132.    The Plaintiff's arrest and prosecution also had the effect of abridging and chilling the Plaintiff's First Amendment freedom of speech and providing his clients with the effective assistance of counsel.

133.    The discrimination has been illegal and is based on the Plaintiff's class of being an advocate of victims of childhood sexual abuse and not being Catholic.

134.    The Plaintiff has been unfairly and illegally prosecuted because he is an attorney opposing and filing actions against Catholic priests and the Plaintiff is not Catholic.

135.    The Plaintiff's civil and constitutional rights were violated by the September 16, 2005 arrest of the Plaintiff which continued as a false and malicious prosecution until the plaintiff's acquittal by a Jury on June 9, 2006 and continued actions toward the Plaintiff.

**AS AND FOR THE THIRD CAUSE OF ACTION**

136.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

137.    This cause of action against the Defendants and all of them is for the Fourteenth Amendment Violation.

138.    Upon information and belief, the training program of the Defendants was deficient in that it failed to properly train police officers and law enforcement on how to deal with a situation wherein a person was being falsely charged.

139.    This deficiency in training caused the Defendants to act with an unfair policy and excessive and unnecessary invective against the Plaintiff and unreasonable detention and treatment at and after the arrest.

140    The Defendants, government officials and also those involved in political activity, acted with an intent and motive to deprive the Plaintiff of his constitutional rights.

141.    This action has the purpose of notifying the proper public officials of dangerous persons or conditions for inappropriate or unlawful government conduct.

142.    The Defendants acted with deliberate indifference in disregarding the risk that its employees would unconstitutionally apply its policies without proper and adequate training.

143.    The Defendants also employed a flawed and inappropriate policy of handling and conducting investigations.

144.    The failure to properly train in this regard represented a policy of the Defendants.

145.    The aforementioned policy actually resulted in Plaintiff's injury.

146.    Plaintiff was subjected to the deprivation of his rights and immunities secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and the Constitution and laws of the State of New York.

147.    By reason of the foregoing, the Plaintiff was injured and subjected to physical and mental pain and suffering, emotional distress, embarrassment, humiliation and fear, from which he continues to suffer and for which he is entitled to compensatory damages.

148.    The Defendants are liable for the violation of Plaintiff's constitutional rights and for his resulting injury by reason of their failure to properly train their officers.

149.    Plaintiff is entitled to recover a reasonable attorney's fee in connection with this cause of action pursuant to 42 U.S.C. § 1988.

150.    The Defendants' violation of the Plaintiffs' Fourth and Fourteenth Amendment rights proximately caused the Plaintiffs damages.

## AS AND FOR THE FOURTH CAUSE OF ACTION

151.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

152.    The Defendants were negligent in their failure to supervise pursuant to 42 U.S.C. § 1983.

153.    Upon information and belief, previous complaints of civil rights violations have been made against the Defendant.

154.    Upon information and belief, complaints of inappropriate and illegal actions have been made against the Defendants by persons other than the Plaintiff.

155.    Upon information and belief, one or more prior incidents occurred in which the Defendant DURIVAGE used excessive force and excessive physical restraint in the course of performing his duties as a police officer.

156.    Upon information and belief, the Defendants were aware of the incidents described above.

157.    Upon information and belief, the complaints and incidents described above were not followed by any meaningful attempt by the Defendants to investigate or to forestall further incidents.

158.    The Defendants evidenced deliberate indifference to the excessive use of force by its police officers, including the Defendant by deliberately ignoring an obvious need for supervision.

159.    The Plaintiff was subjected to the deprivation of his rights and immunities secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, the laws of the United States and the Constitution and laws of the State of New York.

160.    By reason of the foregoing, Plaintiff was injured and subjected to physical and mental pain and suffering, emotional distress, embarrassment, humiliation and fear, from which he continues to suffer and for which he is entitled to compensatory damages.

161.    The Defendants are liable for the violation of Plaintiff's constitutional rights and for his resulting injury by reason of their failure to properly supervise their police officers in general and DURIVAGE in particular.

162.    Plaintiff is entitled to recover a reasonable attorney's fee in connection with this cause of action pursuant to 42 U.S.C. § 1988.

### AS AND FOR THE FIFTH CAUSE OF ACTION

163.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

164.    This cause of action against the Defendants and all of them is for false arrest and malicious and bad faith prosecution and violation of the plaintiff's civil rights.

165.    On September 16, 2005, the defendant DURIVAGE arrested the plaintiff and charged him with petty larceny and harassment despite the fact that the Defendants' claims and charges were false and fabricated and contrary to credible evidence.

166.    The Defendant DURIVAGE in his capacity as a police officer was the second officer to arrive at a scene where a complainant, namely Robert Wells attempted to file a criminal complaint.  Despite the fact that the Defendant DURIVAGE was not the initial responding officer, DURIVAGE personally and individually took full responsibility for the investigation from September 6, 2005 to the Plaintiff's false arrest on September 16, 2005.

167.    Ultimately, the Defendant NUGENT sought and was named special prosecutor due to multiple recusals of the District Attorney and other special prosecutors and upon information

24

and belief, because the charges were against the Plaintiff, at that time a high profile critic of the Catholic Church.

168.    Despite the fact that the Plaintiff in his forty-five years of age had never been convicted or even charged with any crime in his life, and because the facts of the case were relatively minor, contained no allegations of physical contact or any injury, and because the charges were a misdemeanor and a violation, the plaintiff should have been offered by the Defendant NUGENT, a plea bargain or plea agreement of an adjournment in contemplation of dismissal.

169.    That despite the above, the Plaintiff was not offered any plea, or any plea agreement and the only choice was to proceed toward and with a trial before a jury.

170.    That ultimately, with all of the time and expense of a jury, the Plaintiff was acquitted of all charges.

171.    That the reason no plea bargain was offered or even discussed was due to the animosity, malice and bad faith of the Defendants and scienter of the Defendants as herein set out.

172.    The Defendants intentionally did try to damage the Plaintiff's reputation and livelihood.

173.    As indicia of that, the Defendants' Chief of Police Rocco Fragomeni commented to media and solicited the media to advance the false against and arrest of against the Plaintiff.

174.    The September 16, 2005 arrest and June 9, 2006 acquittal by a Jury and events in between and thereafter proximately caused damages to the Plaintiff.

## AS AND FOR THE SIXTH CAUSE OF ACTION

175.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

176.    This cause of action against the Defendants and all of them is for negligence.

177.    The Defendants breached their duty of care owed to members of the public and particularly to the Plaintiff.

178.    The Defendants' breach caused the Plaintiff damages.

179.    The Defendant NUGENT was unfamiliar and/or negligent with the law and failed to have the requisite knowledge that the claim of harassment actually required an intent to contact or an actual contact, and such was never even alleged.

180.    The Defendant NUGENT was unfamiliar and/or negligent with the law in failing to have an intent to steal in his case, which is necessary to prosecute a petty larceny charge.

181.    The Defendants NUGENT and DURIVAGE'S negligence caused charges to be brought and pursued in the absence of credible evidence.

182.    The Defendant NUGENT, based on standard and custom, should have offered the Plaintiff a plea bargain, and his failure to do so was negligent.

## AS AND FOR THE SEVENTH CAUSE OF ACTION

183    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

184.    The Defendants violated the Plaintiff's constitutional First Amendment rights by hindering and chilling the Plaintiff's free speech rights.

185.    In establishing a claim for abridgement of First Amendment rights or retaliation, it is alleged that the speech in question addressed a matter of public concern, that being the ongoing clergy sexual abuse crisis and the sexual abuse of children, matters of extreme public interest and involving serious concern to the safety of children.

186.    The Defendants were aware of a national church strategy to silence and chill the speech of the Plaintiff, and the Defendants acted with bad faith and scienter in order to silence or chill the Plaintiff's free speech rights.

187.    The Defendants' actions have caused the Plaintiff's free speech rights to be abridged.

188.    Same was unlawful and proximately caused the Plaintiff damages.

**WHEREFORE,** the Plaintiff respectfully requests the following:  Five Million ($5,000,000.00) in damages; for attorney's fees awarded by Statute, treble damages or punitive damages and for such further and other relief the Court deems just and equitable.

DATED:  NEW YORK, NEW YORK
            OCTOBER 9, 2007

                                        Yours etc.,


                                         _/s/_____
                                        JOHN A. ARETAKIS
                                        Bar Roll JA #7925
                                        Attorney for Plaintiff
                                        353 East 54th Street
                                        New York, New York 10022-4965
                                        (917) 304-4885