UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JOHN A. ARETAKIS,

                        Plaintiff,

   -against-

ROBERT DURIVAGE, TIMOTHY NUGENT, TOWN
OF NORTH GREENBUSH AND ROBERT D. WELLS,

                        Defendants.
_____

**AFFIDAVIT IN OPPOSITION AND IN SUPPORT OF CROSS MOTION**

**Civil Action No. 07-Civ-5444 (Hon. Shira A. Scheindlin)**

JOHN A. ARETAKIS, under penalty of perjury and being duly sworn, hereby states the following:

    1.    I am the Plaintiff and Attorney Pro Se in this case and make this Affidavit based on personal knowledge in support of the Plaintiff's Motion to Disqualify the Defendant Wells' counsel, Michael L. Costello. This Affidavit is also in support of the Plaintiff's Cross Motion for Leave of the Court to file the Amended Complaint or permit the nunc pro tunc electronic filing of same, if same has not or was not properly filed.

    2.    I make this Affidavit in support of the instant motion for an Order pursuant to Disciplinary Rule 5-102(A) of New York's Code of Professional Responsibility (codified at 22 NYCRR 1200.21(a), and referred to as the "advocate-witness" rule) disqualifying Michael L. Costello, Esq., from representing the Defendant Robert D. Wells in this action, and in opposition to the Defendant movant Durivage's Motion to Dismiss and/or Motion to change venue.

    3.    The Defendant Nugent has Answered the Complaint, and two other Defendants have made Motions. This case concerns the false arrest and prosecution of the Plaintiff, who is

one of only two attorneys in the State of New York who represents and advocates for victims of sexual abuse by Catholic Priests on a wide and full time scale.

4.      In an effort to detail only a part of illegal, unlawful arrest and unconstitutional acts to which the Plaintiff experienced, I set out that in a departure from all standards of practice and custom and an example of animus is that no plea bargain of any kind was ever offered to the Plaintiff after his arrest forcing upon the Plaintiff only one possibility, that of a jury trial.

5.      There was no probable cause for the Plaintiff's arrest, and there was no Grand Jury indictment in the underlying criminal case that forms the gravamen of this case. In addition to the arresting officer acting unreasonably and pursuant to personal animus, the Defendant Durivage made the arrest based on secret tape recordings of the Plaintiff which actually exculpated the Plaintiff.

6.      As set forth in the accompanying Memorandum of Law, the advocate-witness rule is intended to avoid situations where, as here, an attorney's own credibility as a witness is implicated by his client's factual allegations or the allegations of the other side. The case law applying DR 5-102(A) mandates Attorney Costello's disqualification as counsel because he hired Robert D. Wells regarding service of a Costello lawsuit September 6, 2005, and he is alleged to have requested Wells to file and pursue false criminal charges against the Plaintiff Aretakis and because Costello and Aretakis are adversaries on over 100 cases of claims of children being sexually abused by priests represented by Mr. Costello. Mr. Costello is a witness to a significant and disputed facts concerning why Mr. Wells filed and pursued false criminal charges against the Plaintiff. One allegation is that this was done because Mr. Costello and the Plaintiff are adverse in over 100 cases of clergy sexual abuse.

7. DR 5-102(A) is clear- because Attorney Costello is a witness with first hand knowledge of disputed allegations averred in the Complaint, "it is obvious" that he will be called to testify in support of his client's interests on that key issue. In order to defend this action, the Plaintiff needs to obtain Defendants' counsel's testimony in an Examination Before Trial. Mr. Costello, therefore, must be disqualified from acting or appearing as counsel to the Defendant Wells, in this action.

8. This case involves a process server for the Catholic Church hired by Attorney Costello, who served the Plaintiff with process on September 6, 2005. The process server Wells then went on to file false criminal charges against the Plaintiff for which the Plaintiff was arrested on September 16,2005,.prosecuted and ultimately acquitted by a Jury at trial on June 9, 16, 2005. In a departure from good and accepted practice, the Defendant Nugent never ever even offered the Plaintiff a plea, and used false and fabricated information to prosecute the Plaintiff which the Defendant knew was fabricated during the prosecution of same. The Defendant Nugent also had an attorney on his behalf call the trial Judge during the criminal case in an effort to deny the Plaintiff a fair trial. This same counsel, Robert Roche also represents priests accused of sexual abuse and has been used as co-counsel by Michael Costello on clergy cases.

9. Michael Costello hired Defendant Robert D. Wells, a process server and/or his company who he has used for years to serve John Aretakis with a suit by the Catholic Church filed by Mr. Costello on behalf of the Church against Aretakis personally. When Mr. Costello hired Mr. Wells to serve process, he knew and had prior notice that Mr. Wells had seven felony DWI convictions, and also that Defendant Wells spent approximately eight years in a State Prison for serious harming another Individual while the Defendant Wells was intoxicated. Prior

to this Motion, Mr. Costello was requested by the Plaintiff to withdraw himself from his representation of Mr. Wells or Mr. Wells' Company, but he has refused to do so. Mr. Costello's refusal to withdraw has necessitated this Cross Motion.

10. The case at bar contains very serious and meritorious causes of action and constitutional violations and claims of wrongful arrest and prosecution, negligence, etc. The Plaintiff is one of only two attorneys in all of New York State who represents over 250 alleged victims of clergy sexual abuse. After the Catholic Church filed a lawsuit drafted by Mr. Costello against the Plaintiff on September 6, 2005, the Church's process server, hired by Michael Costello, namely Robert D. Wells, made false and fabricated criminal charges against the Plaintiff on September 6, 2005 after serving process. Even though the Plaintiff had no prior criminal record, and the actual filed charges were relatively minor,[1] there was never any offer or attempt at a plea bargain by the special prosecutor. This was due to all of the Defendants' alleged motivation to harm the Plaintiff and his profession, and to make the Plaintiff expend significant resources in defending himself.

11. The Plaintiff was arrested based on the secretly taped telephone calls and these occurred in and from New York City.

12. Robert Wells, after serving John Aretakis went to the police and on the request of Michael Costello, who had and has over 100 cases of clergy abuse of children adverse to John Aretakis, filed and pursued false criminal charges against John Aretakis.

13. Michael Costello authored and helped author a June 15, 2005 Memorandum, attached as Exhibit "A," which encouraged church personnel to have John Aretakis arrested. Two and a half months after the memorandum dated June 15, 2005, Robert Wells, as agent and

---

[1] On or after September 6, 2005, the Defendant Wells did attempt to file charges against the Plaintiff for attempting to kill Wells with a motor vehicle, but only harassment and larceny charges were actually filed against the Plaintiff.

process server for Michael Costello, falsely claimed the Plaintiff threatened, stole from and tried to kill Mr. Wells. Wells filed criminal charges at Mr. Costello's request, and after ten months of being prosecuted, the Plaintiff was acquitted by a Jury.

    14. Michael Costello is and will be a witness on disputed issues of fact that is central to the case. As a witness; the advocacy witness rule prevents his being an attorney on the case. Mr. Costello is also a witness to the Defendant Wells' motivation, and was Mr. Wells' principle at the time of the false arrest.

    15. Although not central to disqualification, having over 100 claims adverse to the Plaintiff also makes Mr. Costello an inappropriate counsel on the case and demonstrates a motive and an explanation why Mr. Costello would want the Plaintiff falsely charged with a crime. Mr. Costello and his clients have also filed or set into motion numerous ethical and disciplinary complaints against John Aretakis, many of which are still pending or were dismissed in the First Department in New York City. None of these ethical complaints or investigations against the Plaintiff has been found to have any merit as the Plaintiff has never been disbarred, suspended, censured or publicly admonished by any Departmental Disciplinary Committee or Committee on Professional Standards.

    16. Mr. Costello's representation is also apparently a free defense, at no cost to Mr. Wells as a method of indemnifying and assisting Mr. Wells, for his attempt to further and advance the nefarious interests of Mr. Costello and his clients in having the Plaintiff arrested and charged.

    17. Mr. Costello personally called the police on occasion to make other criminal complaints directly against the Plaintiff or the Plaintiff's clients. Mr. Costello also participated in numerous cases adverse to the Plaintiff, in New York County Supreme Court and elsewhere.

18.     Mr. Costello also encouraged and represented other church personnel, including Sister Jane Herb and Sister Mary Ellen Owens, RSM who also attempted to file false criminal charges against the Plaintiff Aretakis in 2005 prior to Mr. Wells' criminal complaints.  On these other attempts, the police refused to make an arrest or charge the Plaintiff.

19.     Mr. Costello currently represents numerous priests my clients have accused of sexual misconduct against children.  Public accounts and Mr. Costello's agents have placed the number at 150 priests under investigation for sexually abusing children and persons I represent.

20.     Mr. Costello also hired or cooperated in written and/**or** oral threats to the *Village Voice* in New York City after the publication of a front page February 8, 2006 story that involved sexual abuse allegations by the Plaintiff and the Plaintiff's clients against Mr. Costello's client Bishop Howard Hubbard and Cardinal Edward Egan of the New York Diocese.

## **DEFENDANT DURIVAGE'S MOTION TO DISMISS OR TO CHANGE VENUE**

21.     The Affidavit of movants' attorney, Thomas C. Murphy dated October 29, 2007 states under penalty of perjury that "As such, I am fully familiar with proceedings had herein." Mr. Murphy not only was the lawyer for Defendants (then Respondents) who represented Defendants (then Respondents) after the filing of a Notice of Claim served by the Plaintiff on September 5, 2006, he questioned the Plaintiff at length in a General Municipal 50-H Hearing that took place on February 7, 2007.  The Motion to Dismiss or to change venue of Defendant Durivage is not accompanied by any person with personal and first hand knowledge and as such, the Motion is defective and should fail.  The Motion is also incorrect and factually inaccurate and not probative on a number of important issues and subjects.

22. In the October 29, 2007 Notice of Motion, Mr. Murphy indicated that the "Defendant Town of East Greenbush will move this Court . . ." The Town of East Greenbush is not a defendant, nor a movant and as such the motion is defective or based on false facts. The Motion fails to name any correct Defendant that Mr. Murphy is moving for. <u>Mr. Murphy either does not know</u> <u>who his client is or he has failed to carefully read his own motion</u>. (Emphasis supplied.)

23. In ¶ 3 of Mr. Murphy's seven-paragraph Affidavit, Mr. Murphy claims this case arises out of an incident that occurred on June 5, 2006. Mr. Murphy is again incorrect as the alleged incident in question occurred on September 6, 2005, a false arrest occurred on September 16, 2005 and a trial commenced on June 1, 2006 and an acquittal occurred on June 9, 2006.

24. In ¶ 3, Mr. Murphy states a trial occurred in the Town of North Greenbush Court. Again, he is incorrect, as multiple recusals occurred. As to my knowledge, because of the Plaintiff's advocacy for clergy sexual abuse victims, there were six recusals from hearing the criminal case. Repeated recusals were also due to the Plaintiff's family being members of the Judiciary as the Plaintiff's wife is a retired judge, her uncle was a Northern District Court Judge, and the first cousin of the Plaintiff is a Family Court Judge and the Plaintiff clerked for a Chief Administrative Supreme Court Judge. All of these relationships were in the Capital District region and also are additional reasons the venue of the case should not be removed.

25. Mr. Murphy repeatedly states under penalty of perjury that an altercation occurred, when he should know that there has never even been an allegation of actual physical contact in the false allegations of criminal conduct against the Plaintiff.

26. Mr. Murphy's facts are incorrect, and his motion is procedurally and substantively defective. The Plaintiff was arrested based on tape recordings and other calls made to and from

7

the Southern District and involved a set of facts and witnesses from the Southern District that the Defendant does not dispute.

27. The February 7, 2007 50-H Hearing transcript is incorporated by reference and as the Amended Complaint, refers to actions and operative facts that occurred in the Southern District.

28. Mr. Murphy called me on October 29, 2007 to ask if I would consent to his application to proceed pro hac vice, and I not only gave my consent, I told Mr. Murphy he could advise the Court that I joined in his application. Then on the very same day, he submitted false and incorrect facts to the Court in order to have venue changed, or the case dismissed on facts that are in error. Mr. Murphy consented to my request to file and serve this Opposition on November 15, 2007, although Mr. Costello ignored my repeated telephone messages.

29. The Plaintiff's attorney, as an advisor during and throughout the criminal case against the Plaintiff was Richard Supple, the former Chief Attorney for the First Department's Disciplinary Committee, who lives and works in New York City. He will testify about the Plaintiff being unfairly and falsely targeted by the Church and Mr. Costello, and the legal fees the Plaintiff has paid him for this and other frivolous matters and complaints filed against the Plaintiff.

30. Attorney James Kalamaras is also a witness and he lives and works in Brooklyn, New York. Mr. Kalamaras assisted with the Plaintiff's defense in the criminal case, as well as the Plaintiff's primary residence in the Southern District and operative facts that occurred there.

31. Fr. Robert Hoatson, a priest who lives and works in New Jersey and John Vendikos who lives in New Jersey, are witnesses in the case, and they are both just outside of New York City.

32. All of these persons will be inconvenienced or unable to attend a trial if the case is moved 150 miles.

## VENUE, MOTION AND SERVICE OF AN AMENDED COMPLAINT

33   The Plaintiff has primarily practiced in New York City for most of and at least for the last twelve years, having worked at Fuchsberg & Fuchsberg and the Schwartz Karlan Firm, and for the last eight years as a sole practitioner.

34. On October 9, 2007 and October 10, 2007 I witnessed a secretary on my behalf make numerous unsuccessful attempts to electronically file the Amended Complaint. She finally advised me that she was able to do so. Her difficulty was because the electronic filing system has and had no specific reference for the electronic filing of an Amended Complaint, as she ended up e-mailing the Amended Complaint to the Clerk of the Court. For this reason and the Defendant Durivage's Motion, the Plaintiff has made a Cross Motion for the Court to accept the Plaintiff's filing, or allow a nunc pro tunc filing of same.

35. Because this secretary had so much difficulty with ECF, I also sent via Federal Express two hard copies of the Amended Complaint for filing on or about October 9, 2007. The Clerk of the Court responded, filed same and confirmed receipt of same.

36. In addition, the ECF System was also down on Thursday, October 11, 2007 and possibly on other occasions that week for several hours due to maintenance.

37. Since Mr. O'Connor's client was served on October 9, 2007 and filing was either complete or attempted to be complete on October 9 or 10, 2007, Mr. O'Connor cannot point to any prejudice. Regardless, the Amended Complaint was filed at least three days before the Court's imposed deadline of October 12, 2007 occurred. The Plaintiff made good faith efforts

and reasonable attempts to file the pleading. The case at bar bears no resemblance to any of the cases cited by Defendant Durivage in an attempt to dismiss or move the venue of this case.

38. In addition, the Court's July 18, 2007 Order recites Rule 4(m) of the Federal Rules of Civil Procedure that the Court in its discretion could dismiss the action <u>without</u> prejudice. In other words, a dismissal without prejudice is not on the merits and the Plaintiff may refile and reserve the action. This serves no purpose and would only create undue time, effort and expense of purchasing a docket number and having to serve the Defendants again.

39. The Defendants' Motion does not dispute in any manner the Affidavits on file with the Clerk's Office and does not indicate any prejudice to the Defendants.

40. One of the reasons why it took the Plaintiff over two and one half months to serve and file the Amended Complaint is due to personal and family emergencies and because the Plaintiff is a sole practitioner. In the months of August to the middle of September, 2007, the Plaintiff had two deaths in the family and both required trips at significant distances. In one family matter, an aunt died leaving two handicapped adult children, and it took the Plaintiff weeks to assist with this family emergency. The Plaintiff repeatedly worked on and further drafts of the Amended pleading in late September for an early October 2007 filing.

41. The Defendants have not provided any probative evidence that supports its Motion to change venue. The Defendants' Memorandum of Law concedes that the Court "must draw all reasonable inferences and resolve all factual conflicts in favor of the Plaintiff." (Defendant's Memorandum of Law, page 3.)

42. Operative facts occurred that give rise to the facts in the Complaint are alleged to have occurred in the Southern District. The Plaintiff's Amended Complaint (Paragraphs 59, 60, 62 63, 80, etc.) state that secret tape recorded telephone calls were made with the Plaintiff in

New York City, other witnesses are located in the Southern District and the Plaintiff primarily resides in New York City and all of the Defendants were aware of this. The Plaintiff completed his civil jury service in New York City in 1996 and sat on a one-month criminal grand jury in 2004, and otherwise has his primary residence in the Southern District, where operative facts occurred.

43.     Mr. O'Connor's Memorandum of Law makes the bald and conclusiory statement that "No significant events material to any allegations in the complaint took place in the Southern District." Despite that Mr. O'Connor is incorrect, he cannot make such a statement without any affidavit or from anyone of knowledge of facts.

44.     Thomas O'Connor, by way of Affidavit swears that a particular party and his family reside in a district other than the Southern District, without any proof, affidavit or basis upon which to assert same. As such, his proof in this regard does not meet any standard of evidence.

45.     The Amended Complaint was substantially the same as the Complaint, only more detailed and accurate. As both documents (the Complaint and Amended Complaint) are on file with the Court, and the Defendants have prior notice of the claims asserted therein, and have not and cannot prove any prejudice.

46.     The Plaintiff has shown good cause for any failure to properly or timely file the pleading and a meritorious claim. The Defendants have had notice of all aspect of this case for over a year. The Defendants had a 50-H Hearing and questioned the Plaintiff at length about the site of occurrences and the claims in the Amended Complaint.

47.     As set out in the Amended Complaint, when my wife was admitted to the hospital on September 6, 2005 with chest pains, I raced up from New York City when the defendant

11

Wells served me with Mr. Costello's lawsuit, and then falsely alleged that I committed criminal actions.

48.    Prior to September 6, 2005, Defendant Wells had been advised to not trespass on the property, whereby my wife and son reside due to frightening and threatening behavior in the past. Prior to September 6, 2005, Mr. Wells was advised by my wife that she and/or we would accept process by facsimile and/or mail.

49.    When Captain Durivage talked to the Plaintiff on the phone and secretly tape recorded and investigated me, I was in New York City. When I was to be arrested on September 16, 2007, I was in New York City. During the nine to ten months I was prosecuted and falsely charged, I was in the Southern District. When I defended myself and when significant facts occurred, I was in the Southern District in the criminal case against the Plaintiff and utilized other New York City counsel and persons.

50.    The Defendants questioned witnesses in New York City and multiple records were from or involved New York City in the criminal case against or for the Plaintiff.

51.    These are words, actions and evidence from me directly. The arguments of the Defendants are arguments of counsel, and have little or no probative or evidentiary value. In addition, as the Memorandum of Law sets out, the question is whether some of the operative facts occurred in the Southern District, and the choice of the Plaintiff will not freely be disturbed.

52.    The Defendants' attempt to change venue is an attempt to forum shop.

**WHEREFORE**, it is respectfully requested that the Defendants' Motion to Dismiss or to change venue be denied in its entirety, and for the Court to grant the Plaintiff's Motion to disqualify Mr. Costello, and for such further and other relief that the Court deems appropriate and just.

DATED:   NEW YORK, NEW YORK
         NOVEMBER 14, 2007


         ____/s/_____
         JOHN A. ARETAKIS
         Bar Roll No.  JA7925
         353 East 54th Street
         New York, New York 10022-4965
         (917) 304-4885
         facsimile (518) 286-3065
         email:  aretakis@nycap.rr.com


Sworn to before me this 14th day
of November, 2007.


/s/   Nia C. Cholakis_____
Notary Public

TO:   MICHAEL. COSTELLO, ESQ.
      Tobin & Dempf
      33 Elk Street
      Albany, NewYork 12207

      THOMAS J. O'CONNOR, ESQ.
      Napierski Vandenburgh & Napierski, LLP
       96 Washington Avenue Ext.
      Albany, New York 12203

      THOMAS K. MURPHY, ESQ.
      Murphy Burns Barber & Murphy, LLP
      4 Atrium Drive
      Albany, New York 12205